Suzanne M. HAHN, et al.,
Plaintiffs-Appellees,

and

Equal Employment Opportunity Commission, Intervenor-Plaintiff-Appellee,

v.

The CITY OF BUFFALO, A Municipal Corporation, et al.,
Defendants-Appellants.

Nos. 941, 1179, Dockets
84–7990, 84–9018.

United States Court of Appeals,
Second Circuit.

Argued April 1, 1985.

Decided Aug. 6, 1985.

Age Discrimination in Employment Act, § 4(a)(1), as amended, 29 U.S.C.A. § 623(a)(1). N.Y.McKinney's Civil Service Law § 58, subd. 1(a).

---

Douglas S. Cream, Asst. Atty. Gen., Buffalo, N.Y. (Robert Abrams, Atty. Gen., Albany, N.Y., Robert Hermann, Sol. Gen., Buffalo, N.Y., on brief), for defendant-appellant New York State Civil Service Com'n.

J. Kenneth L. Morse, Washington, D.C. (Johnny J. Butler, Gen. Counsel, Susan Buckingham Reilly, Washington, D.C., on brief), for intervenor-plaintiff-appellee E.E.O.C.

William A. Price, Buffalo, N.Y. (Price, Johnston, Buffalo, N.Y., on brief), for plaintiffs-appellees.

Before FEINBERG, Chief Judge, and VAN GRAAFEILAND and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns a challenge under the Age Discrimination in Employment Act (ADEA) to a state law that establishes a maximum age of 29 for hiring police officers in New York. The City of Buffalo and the New York State Department of Civil Service appeal from a judgment of the District Court for the Western District of New York (John T. Curtin, Chief Judge) invalidating section 58(1)(a) of the New York Civil Service Law.[1] The District Court found section 58(1)(a) in conflict with section 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1) (1982), rejecting defendants-appellants' argument that the maximum hiring age was a bona fide occupational qualification (BFOQ) under section 4(f)(1) of the

---

1. The statute provides, in relevant part, that
   no person shall be eligible for provisional or permanent appointment in the competitive class of the civil service as a police officer of the capital police force of the state office of general services ..., or as a police officer of any police force, or police department of any county, city, town, village, housing authority or police district unless he shall satisfy the following basic requirements:

   (a) he is not less than twenty nor more than twenty-nine years of age, provided, however, that the time spent on military duty or on terminal leave, not exceeding a total of six years, shall be subtracted from the age of any applicant who has passed his twenty-ninth birthday....

   N.Y.Civ.Serv.Law § 58(1)(a) (McKinney 1983).

ADEA, *id.* § 623(f)(1). *Hahn v. City of Buffalo*, 596 F.Supp. 939, 940, 953 (W.D.N. Y.1984). We affirm.

### BACKGROUND

This suit was brought by individuals who applied to become members of the Buffalo police force and were found ineligible by virtue of section 58(1)(a) because they were over 29 years of age. The Equal Employment Opportunities Commission (EEOC) intervened in support of the plaintiffs. As originally presented, the suit challenged the maximum hiring age under both the ADEA and the Equal Protection Clause of the Fourteenth Amendment. On the constitutional claim, the District Court ruled that the age-29 limit must be sustained if the New York civil service law provision was rationally related to a legitimate state interest. After receiving considerable evidence from health experts and various police officials, Chief Judge Curtin concluded that this standard had been met. On this appeal the plaintiffs-appellees do not challenge the constitutional ruling.

On the statutory claim, Chief Judge Curtin recognized that since the ADEA protects persons between the ages of 40 and 70, 29 U.S.C. § 631(a), only those plaintiffs age 40 or older have standing to pursue the ADEA claim.[2] As the District Judge noted, the major issue on their ADEA claim was whether being below age 40 is a BFOQ for the hiring of police officers. In resolving this issue, Chief Judge Curtin used the test set forth in *Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224, 235–36 (5th Cir. 1976). This test requires the employer to show (1) that the job disqualifications are reasonably necessary to the essential operation of the business and (2) that there is a factual basis for believing that all or substantially all of the persons within the class protected by the ADEA would be unable to perform the job effectively and safely or that it is impossible or impracticable to

determine job fitness on an individualized basis. Applying this standard, Chief Judge Curtin made numerous critical findings. For example, he found that more than half of the 797 police officers in the Buffalo Police Department were over age 40; 176 of those were over age 50. 596 F.Supp. at 947. He also noted that every expert who testified conceded that some officers over 40 have sufficient physical ability to do competent police work. *Id.* at 948. He found that "a significant percentage of persons over age 40 could perform at the level of the average person in his or her twenties." *Id.* at 949. He also found that many persons over age 40 are patrolmen doing the same work as new appointees and at no "unacceptable risk to the public." *Id.* at 953. Based on all the evidence, the District Court concluded that the defendants had not established a BFOQ defense.

Having decided the case in favor of the plaintiffs, the District Judge entered a judgment of somewhat uncertain scope. The judgment recites only that "judgment is entered in favor of" plaintiffs Koch, Smith, and Walker (the three over 40) and the plaintiff-intervenor EEOC. Neither the judgment nor the opinion that ordered its entry spells out any other operative provisions. The specific claims of these three individuals to have their employment applications considered without regard to their age had previously been resolved in their favor by the grant of preliminary injunctive relief. What remains uncertain is whether the judgment invalidates section 58(1)(a) on its face or only as applied to hiring for the Buffalo Police Department. The complaint had sought a declaration of invalidity of the challenged provision "on its face and/or as applied to the plaintiffs."

We conclude that the judgment was intended to invalidate section 58(1)(a) throughout New York State. Chief Judge Curtin did not confine the evidence to the duties of police officers in Buffalo, and his opinion notes that the provision discrimi-

---

**2.** The judgment in this case technically prohibits enforcement of section 58(1)(a) only against applicants aged 40 or older. However, the City of Buffalo has acknowledged that, if the ADEA prevents it from hiring applicants aged 40 and over, it will not refuse to hire applicants between the ages of 30 and 39.

nates against prospective appointees to municipal police "departments." 596 F.Supp. at 953. Since the State Civil Service Commission was a defendant, the Commission is bound by the judgment and is precluded from enforcing section 58(1)(a) anywhere in the State.[3]

### DISCUSSION

■ Preliminarily, two observations concerning the nature of the issues raised on this appeal are appropriate. First, the ADEA is frequently thought of as a prohibition against attempts by employers to *discharge* employees because of their age. Yet there can be no doubt that the ADEA also stands as a prohibition against unjustified maximum age limits for *hiring*. In either circumstance the employer is deciding that a person is too old for a position. Arguably, different standards might apply in determining the validity of the justification, if any, for that decision, depending on whether the person claiming age discrimination is an employee being discharged or an applicant seeking employment. But neither the ADEA nor the case law has made such a distinction, *compare, e.g., Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 80–82 (2d Cir.1983) (*prima facie* case of wrongful discharge shifts burden of proof onto defendant), *with Hodgson v. First Federal Savings and Loan Association*, 455 F.2d 818, 822–23 (5th Cir.1972) (*prima facie* case of wrongful refusal to hire shifts burden of proof onto defendant), and, if one is to be made, that is a matter for Congress.

■ Second, many ADEA cases involve litigation of issues peculiar to the individual plaintiffs bringing suit. This always occurs when the issue is whether the employer's adverse decision has in fact been made on the basis of age. Even when age is conceded to be the basis for an adverse employment decision, individualized issues sometimes arise as to whether age is a BFOQ for the precise duties performed, or to be performed, by the plaintiff. *See, e.g., Houghton v. McDonnell Douglas Corp.*, 553 F.2d 561 (8th Cir.), *cert. denied*, 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 451 (1977), *on remand*, 474 F.Supp. 193 (E.D. Mo.1979), *rev'd*, 627 F.2d 858 (8th Cir.1980). This case, however, presents a broader inquiry: Whether being less than 40 is a BFOQ for the position of municipal police officer. One might think that for inquiries of such scope it would be preferable to have an administrative agency such as the EEOC make the determination on the basis of an extensive hearing record, with the result, after judicial review, normally binding throughout the country except in situations where a plaintiff could claim that policing in a particular community was less arduous than in a typical community or where a municipal employer could claim the opposite. It seems somewhat anomalous for the lawfulness of maximum age limits on police hiring to depend on the particular evidence presented at various court trials throughout the country. *Compare EEOC v. County of Los Angeles*, 706 F.2d 1039, 1042–44 (9th Cir.1983) (age 35 not a BFOQ for deputy sheriffs), *cert. denied*, —— U.S. ——, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984), *and EEOC v. County of Allegheny*, 705 F.2d 679, 680–81 (3d Cir.1983) (age 35 not a BFOQ for county police officers), *with EEOC v. Missouri State Highway Patrol*, 555 F.Supp. 97, 106 (W.D.Mo.1982) (age 32 a BFOQ for highway patrol officers). Nevertheless, the ADEA accords each person between 40 and 70 the right to challenge an adverse employment decision based on age and thereby obligates each employer to defend such challenges in separate actions, despite the application of the same age limit to similar or even identical occupations in different communities. Moreover, Congress has not provided for agency determination of whether a particu-

---

**3.** The only local defendants in this case are the City of Buffalo, various individuals employed by it, and the sheriff of Erie County. Arguably, therefore, the District Court's judgment does not prevent other communities, not parties to this litigation, from enforcing maximum hiring age limits and seeking to defend age as a BFOQ on the basis of evidence that might well be different from that presented to Chief Judge Curtin.

lar age is a BFOQ for a particular occupation. The District Court was therefore obliged to undertake the extensive inquiry it made, and our task is limited to determining whether its findings are clearly erroneous and whether relevant legal standards were correctly applied.

■ On the factual issues, we have no basis to disturb any of the District Court's findings. The defendants-appellants have not shown that any finding is clearly erroneous, and we are not at liberty to accept their invitation simply to disagree with the findings made by the District Court.

With respect to the legal standards, two recent decisions of the Supreme Court have eliminated all doubt as to the correctness of the District Court's decision. In *Western Air Lines, Inc. v. Criswell*, — U.S. —, —, 105 S.Ct. 2743, 2753, 86 L.Ed.2d 321 (1985), the Court explicitly approved the two-part inquiry for evaluating a BFOQ defense set forth in *Usery v. Tamiami Trail Tours, Inc., supra*, and applied by Chief Judge Curtin in this case. In *Johnson v. Mayor of Baltimore*, — U.S. —, 105 S.Ct. 2717, 86 L.Ed.2d 286 (1985), *rev'g* 731 F.2d 209 (4th Cir.1984), the Court explicitly rejected the contention, urged by appellants here, that a maximum hiring age for public safety personnel should be found to be a BFOQ as a matter of law because Congress has authorized heads of federal agencies to set maximum age limits for hiring federal law enforcement officers. *See* 5 U.S.C. § 3307(d) (1982). In light of *Criswell* and *Johnson*, appellants' legal contentions are foreclosed.

■ We therefore affirm the judgment of the District Court essentially on the basis of Chief Judge Curtin's thorough and well-reasoned opinion.

VAN GRAAFEILAND, Circuit Judge, concurring in part:

Although I agree with the district court's substantive holding that section 58(1)(a) of the New York State Civil Service Law violates the ADEA rights of plaintiffs over 40 years of age, I am not prepared to affirm *in toto* the dispositive portions of the dis-

trict court's judgment. As I read the opinion below, it invalidates section 58(1)(a) not only as it applies to persons over 40, but also for persons younger than 40. *See* 596 F.Supp. at 953–54. Moreover, it sets forth no justification for such disposition. It is a well-established principle of law that "a court should refrain from invalidating more of [a] statute than is necessary". *Regan v. Time, Inc.*, — U.S. —, 104 S.Ct. 3262, 3269, 82 L.Ed.2d 487 (1984). "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Buckley v. Valeo*, 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976) (*quoting Champlin Refining Co. v. Corporation Commission of Oklahoma*, 286 U.S. 210, 234, 52 S.Ct. 559, 564, 76 L.Ed. 1062 (1932)). There are some indications in the record that the New York Legislature was as concerned about those in the age group between 30 and 40 as it was about those over 40, who would likely be disqualified in any event on physical grounds. At least, the district court made no finding to the contrary. Under the circumstances, the district court's judgment should be modified so as to enjoin the defendants from enforcing section 58(1)(a) only as it applies to those persons who are between the age of 40 and 70. *See* 29 U.S.C. § 631.

I believe also that the district court's judgment was not intended to be applied statewide. Chief Judge Curtin's opinion opens with the unequivocal statement:

> This case involves age discrimination in the hiring of police officers in Buffalo, New York, and other municipalities in the Buffalo area.

596 F.Supp. at 941.

One would hope that the authorities in the remainder of New York State would decide to abide by Chief Judge Curtin's ruling. However, in my opinion, the ruling does not compel them to do so.

Finally, I think it necessary to attach a caveat to my vote for substantive affirmance. Because Congress, in its wisdom,

has decided that the "traditional stereotyped conceptions regarding the physical ability of women to do particular work" must be rejected, *Rosenfeld v. Southern Pacific Co.*, 444 F.2d 1219, 1225 (9th Cir. 1971), and that, insofar as employment is concerned, age must be treated in a completely neutral fashion, *Parcinski v. Outlet Co.*, 673 F.2d 34, 37 (2d Cir.1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 950 (1983), there is an obvious need for an effective testing and screening procedure for would-be police officers. A basic premise upon which plaintiffs and the EEOC based their claim for relief was that Buffalo's Police Officer Physical Fitness Test, which measures agility, strength, speed, endurance, and cardiovascular endurance, is a valid and proper test of a candidate's physical qualifications. *See* 596 F.Supp. at 953. In affirming the district court's holding, we should recognize this to be so.

As a general rule, if any group of candidates can show that a disproportionate number of its members have failed to pass a qualifying test, it establishes a prima facie case of discrimination. *See Berkman v. City of New York,* 536 F.Supp. 177, 205–06 (E.D.N.Y.1982), *aff'd,* 705 F.2d 584 (2d Cir.1983); *Hodgson v. First Federal Savings and Loan Association,* 455 F.2d 818, 822–23 (5th Cir.1972). Because disproportion is almost certain to occur with respect to male and female police candidates ranging in age from 20 to 70, it is important that the validity of Buffalo's Physical Fitness Test be acknowledged. Otherwise, Buffalo almost certainly will be faced in the future with the heavy burden of proving job relatedness. *See, e.g., Berkman, supra; Kirkland v. New York State Department of Correctional Services,* 520 F.2d 420, 425–26 (2d Cir.1975), *cert. denied,* 429 U.S. 823, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976). One need not have the gift of second sight to predict that, in such event, the usual coterie of plaintiffs' "experts" will testify that the agility, strength, speed, endurance, and cardiovascular endurance required by the Buffalo test are not really

necessary qualifications for appointment to the Buffalo Police Force.

Since the validity of Buffalo's present testing procedures is the foundation upon which plaintiffs successfully built their case, my vote for affirmance is predicated on the proposition that this foundation will not be disturbed.