786 F.2d 523
 40 Fair Empl.Prac.Cas. 598,
39 Empl. Prac. Dec. P 36,051, 54 USLW 2499
 John DOYLE, Barbara McCuen, William T. Milne, Frank Misiano,
John J. Presta, Kevin Sweeney, George Lynn, Frederick
Slanovec, Chris Innes, and John Considine, for themselves
and for all persons similarly situated, Plaintiffs- Appellants,
v.
SUFFOLK COUNTY, Suffolk County Civil Service Commission, and
Suffolk County Police Department, Defendants-Appellees,
and
State of New York, Intervenor-Appellee.
Rolf HETTINGER and Michael J. McConnell, Plaintiffs-Appellees,
v.
NASSAU COUNTY CIVIL SERVICE COMMISSION, Adele Leonard, as
Executive Director of the Nassau County Civil Service
Commission, Nassau County Police Department and the County
of Nassau, Defendants-Appellants,
and
State of New York, Intervenor-Appellant.
 Nos. 567, 653, Dockets 85-7782, 85-7820.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 11, 1985.
Decided March 19, 1986.
 
 Douglas J. Kramer, New York City (Baden Kramer Huffman & Brodsky, New York City, on brief), for plaintiffs-appellants in No. 85-7782.
 Doyle, Misiano, Sweeney, Presta & Considine filed a pro se supplemental brief in No. 85-7782.
 John J. Maguire, Little Neck, N.Y. (Richard Hartman, Little Neck, N.Y., on brief), for plaintiffs-appellees in No. 85-7820.
 James M. Catterson, Jr., Port Jefferson, N.Y. (William H. Pauley III and Scott M. Yaffe, Snitow & Pauley, New York City, on brief), for defendants-appellees in No. 85-7782 and for defendants-appellants in No. 85-7820.
 Robert Abrams, Atty. Gen., Robert Hermann, Sol. Gen., Harvey M. Berman, Asst. Atty. Gen., New York City, submitted a brief for intervenor-appellee.
 Before KAUFMAN, NEWMAN and MINER, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 These two related but unconsolidated appeals present equal protection challenges to enforcement of New York's statutory prohibition against the hiring of police officers who are "more than twenty-nine years of age," N.Y.Civ.Serv.Law Sec. 58(1)(a) (McKinney 1983). The challenges arise in the wake of our prior decision in Hahn v. City of Buffalo, 770 F.2d 12 (2d Cir.1985), which affirmed a judgment invalidating section 58(1)(a) as applied to those between the ages of 40 and 70 because age 40 had not been shown to be a bona fide occupational qualification under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Secs. 621-634 (1982). Both appeals are from judgments of the District Court for the Eastern District of New York. In No. 85-7782, Judge Frank X. Altimari rejected the federal constitutional challenge in a suit brought against Suffolk County, its Police Department, and its Civil Service Commission. In No. 85-7820, Chief Judge Jack B. Weinstein, apparently misled by imprecise language in Hahn, ruled in favor of applicants for the position of police officer in a suit brought against Nassau County, its Police Department and Civil Service Commission, and the Commission's director. For reasons that follow, we reject the constitutional challenge and therefore affirm in the Suffolk County suit and reverse in the Nassau County suit.Background
 
 
 2
 Section 58(1)(a) generally prohibits the appointment of any person as a police officer of a county, city, town, or village who is less than 20 or "more than twenty-nine years of age." The New York courts have interpreted the quoted phrase to apply to any person who has had a 29th birthday. Kuczka v. Clark, 86 A.D.2d 980, 448 N.Y.S.2d 325 (4th Dep't), aff'd, 58 N.Y.2d 738, 459 N.Y.S.2d 28, 445 N.E.2d 204 (1982). The maximum age limit is subject to two exceptions. A person who has had a 29th birthday remains eligible for appointment for whatever period of time was spent on military duty or terminal leave up to a maximum period of six years, but in no event may such extra eligibility extend beyond the person's 35th birthday. N.Y.Civ.Serv.Law Sec. 58(1)(a); N.Y.Mil.Law Sec. 243(10-a) (McKinney Supp.1984); see Kuczka v. Clark, supra. In addition, eligibility may be extended until a person's 35th birthday for a police department experiencing a "serious shortage" of police officers because of "aggravated recruitment difficulties." N.Y.Civ.Serv.Law Sec. 58(1)(d)(1-a).
 
 
 3
 In Hahn v. City of Buffalo, supra, applicants for the position of police officer challenged section 58(1)(a) as violative of both the Equal Protection Clause of the Fourteenth Amendment and the ADEA. Chief Judge Curtin rejected the constitutional challenge but found the state provision invalid under the ADEA as to those between the ages of 40 and 70 (i.e., those who have had a 40th but not a 70th birthday), the age group protected by the ADEA. On appeal, the constitutional ruling was not challenged. See Hahn v. City of Buffalo, supra, 770 F.2d at 14. The ADEA ruling was upheld. The majority opinion considered the scope of the judgment entered by Chief Judge Curtin as to age groups and geographic coverage. We noted that the judgment "technically prohibits enforcement of section 58(1)(a) only against applicants aged 40 or older" but that the City of Buffalo agreed not to refuse to hire applicants between ages 29 and 40 if it was found to be barred by the ADEA from hiring those between 40 and 70, id. at 14 n. 2.[1] Turning then to the geographic scope of the judgment, we concluded that it applied to police hiring not only in Buffalo but throughout New York State. Id. at 14. The result of Hahn is that section 58(1)(a) may not be used to prevent any person between the ages of 40 and 70 from being hired as a police officer in New York State because of age.
 
 
 4
 Against this background, the two cases currently on appeal were decided. In No. 85-7782, six persons who passed the Suffolk County Civil Service examination for police officer were told that they were no longer eligible for consideration for appointment as police officers because they had become 29. Their suit was filed as a class action, but no class was ever certified. They challenged their rejection, relying on the Equal Protection Clause of the Fourteenth Amendment and New York constitutional and statutory provisions. On a motion to dismiss under Fed.R.Civ.P. 12(b)(6), Judge Altimari rejected the federal constitutional challenge, concluding that section 58(1)(a) was rationally related to the legitimate state interest of ensuring that the police force is physically able and capable of being trained. With the federal claim failing at the outset of the litigation, the District Judge properly declined to exercise pendent jurisdiction over the state law claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); Palmer v. Ticcione, 576 F.2d 459, 464 (2d Cir.1978), cert. denied, 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979).
 
 
 5
 In No. 85-7820, two persons who passed the Nassau County Civil Service examination for police officer were informed of their ineligibility when they became 29. Their suit, filed only on behalf of themselves, challenged the age 29 ceiling on federal equal protection and due process grounds. Chief Judge Weinstein indicated that he considered the constitutional challenge to be without merit. However, seizing upon the language in Hahn that the District Court judgment in that case was "intended to invalidate section 58(1)(a) throughout New York State," 770 F.2d at 14, he concluded that we meant to strike down the statute as applied to persons of all ages, rather than as applied only to those between 40 and 70, which, as we noted, was the scope of the judgment affirmed in that litigation. The sentence relied on by Chief Judge Weinstein was concerned with the geographic scope of the Hahn judgment and was not intended to expand the age-group scope of the judgment, which was fixed both by the terms of the judgment and by the terms of the ADEA, which the judgment implemented. Our meaning would have been clearer, however, had we repeated the age-group scope of the decision when discussing the geographic scope. Chief Judge Weinstein's misinterpretation, though far from compelled, is entirely understandable. As a result of his reading of Hahn, Chief Judge Weinstein granted summary judgment for the plaintiffs and ordered them appointed to the June 1985 recruit class at the Nassau County Police Academy. He then stayed his order pending this appeal.
 
 
 6
 Since both cases are suits in which the constitutionality of a state statute affecting the public interest is drawn in question and since it did not appear that the State of New York had been afforded an opportunity to intervene, see 28 U.S.C. Sec. 2403(b), we invited the State to intervene while the appeals were pending, cf. In re Goldrich, 771 F.2d 28, 29 (2d Cir.1985) (views of New York Attorney General invited and received in lieu of intervention). New York State has elected to intervene, and we have received a brief from the State Attorney General urging affirmance in No. 85-7782 and reversal in No. 85-7820.
 
 Discussion
 
 7
 The threshold issue is whether the actions of Suffolk and Nassau Counties, in eliminating the plaintiffs from consideration for appointment as police officers solely because each had become 29, are an application of section 58(1)(a) or an implementation of an administrative policy of the counties unaided by state statute. That issue must be determined because if the counties are applying their own policy, unaided by state statute, we could turn directly to the constitutionality of the counties' actions without pausing to determine the status and meaning of the state statute in light of its partial invalidation in Hahn.
 
 
 8
 The complaint in each case alleges that the county acted because of the requirements of section 58(1)(a). Though answers were never filed, the correctness of this assertion has never been disputed in the proceedings that occurred in the District Court. At oral argument we asked counsel for the counties if the actions challenged in these cases were based on section 58(1)(a) and have been informed by letter dated December 13, 1985, that the state statute is relied on by both counties.
 
 
 9
 We must therefore consider how New York courts would interpret section 58(1)(a) in light of its partial invalidation in Hahn. They could conclude that the New York legislature, if aware that it could not prohibit hiring, because of age, those between 40 and 70, would either (a) prefer not to set any age maximum for police hiring or (b) prefer to reject police applicants who have had a 29th birthday but not a 40th birthday and those who have had a 70th birthday. If the legislature would prefer to have the statute applied to the extent not invalidated in Hahn, then the constitutionality of the surviving portion of the statute would remain for consideration on this appeal. Neither the statutory nor the constitutional issues arising as a consequence of the partial invalidity of section 58(a)(1) were presented in Hahn because the City of Buffalo voluntarily agreed not to reject, on the basis of age, those who had reached 29 but had not reached 40.
 
 
 10
 Normally, the problem of partial invalidity arises when one discrete provision of a statute is invalidated, creating uncertainty as to whether the legislature would have wished the remaining provisions to remain in effect in the absence of the invalidated provision. See Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (federal statute); Westinghouse Electric Corp. v. Tully, 63 N.Y.2d 191, 481 N.Y.S.2d 55, 470 N.E.2d 853 (1984) (New York statute). On occasion, the issue arises when a single provision is partially invalidated. This can occur in either of two contexts. A provision may be found to be underinclusive, thereby requiring a court to determine whether the legislature, had it known it could not legislate in a limited fashion, would have preferred to have no statute or to have the statute extended to apply to the impermissibly excluded class. See Soto-Lopez v. New York City Civil Service Commission, 755 F.2d 266, 280-81 (2d Cir.) (invalidating provision limiting five-point bonus on civil service examinations to veterans who were residents of New York at time of induction and extending bonus to all veterans), prob. juris. noted, --- U.S. ---, 105 S.Ct. 3523, 87 L.Ed.2d 648 (1985); People v. Liberta, 64 N.Y.2d 152, 485 N.Y.S.2d 207, 474 N.E.2d 567 (1984) (invalidating exemption from rape and sodomy statutes for married men and for females and extending coverage of criminal statutes to formerly excluded classes). Or, less frequently, a provision may be found to be overinclusive, thereby requiring a court to determine whether the legislature, had it known it could not legislate broadly, would have preferred to have no statute or to have the statute limited to apply to all those except the impermissibly included class. See Confederated Bands and Tribes of Yakima Indian Nation v. Washington, 552 F.2d 1332, 1336 (9th Cir.1977) (invalidating provision to the extent that it confers state criminal jurisdiction over Indian lands and declaring invalid remainder of statute conferring civil jurisdiction),[2] rev'd, 439 U.S. 463, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979) (upholding exercise of state criminal jurisdiction). Our case falls in this last category, requiring us to decide whether, after the partial invalidation of section 58(1)(a) as applied to those between 40 and 70, the New York legislature would prefer to have the statute's maximum age limit applied to all except those between 40 and 70 or would prefer to abandon a maximum age limit.
 
 
 11
 The inquiry, in each context, is always said to require a determination of legislative intent, see People ex rel. Alpha Portland Cement Co. v. Knapp, 230 N.Y. 48, 60, 129 N.E. 202, 207 (1920); see also Buckley v. Valeo, supra, 424 U.S. at 108, 96 S.Ct. at 677; Confederated Bands and Tribes of Yakima Indian Nation v. Washington, supra, 552 F.2d at 1336; People v. Liberta, supra, 64 N.Y.2d at 171, 485 N.Y.S.2d at 218, 474 N.E.2d at 578; Westinghouse Electric Corp. v. Tully, supra, 63 N.Y.2d at 196, 481 N.Y.S. at 57, 470 N.E.2d at 855, but it is not the traditional inquiry as to what the legislatures intended their broad statutory language to mean when applied to a specific set of facts. Rather, the question is what they would have intended had they foreseen that their statute would be declared partially invalid. We can do no more than make an educated guess, mindful that legislative policy should be given effect unless application of the portion of a statute remaining after partial invalidation yields results that the legislature seems unlikely to have wanted or if the remaining portion is such a minor fragment of a comprehensive provision as to make it likely that the legislature would prefer either no provision or the opportunity to craft a new one.
 
 
 12
 There is a presumption that the legislature would prefer the portion remaining after partial invalidation to continue in effect. See, e.g., Regan v. Time, Inc., 468 U.S. 641, 104 S.Ct. 3262, 3269, 82 L.Ed.2d 487 (1984) (plurality opinion); Buckley v. Valeo, supra, 424 U.S. at 108, 96 S.Ct. at 677. That presumption is reenforced with respect to section 58(1)(a) by the broad severability provision contained in N.Y.Civ.Serv.Law Sec. 186 (McKinney 1983). Though section 186 does not in terms apply to the type of partial invalidation that occurred in Hahn, where a provision was held invalid as applied to a group within its coverage, as distinguished from the invalidation of an entire provision, sentence, or clause, the thrust of the severability provision evidences a marked preference for maintaining any portion of the civil service law that remains after partial invalidation.
 
 
 13
 In enacting section 58(1)(a), the New York legislature made clear its preference that those 29 or older should not be appointed police officers, with limited exceptions for veterans of military service and for recruitment emergencies. With the statute invalidated as to those between 40 and 70, we have no doubt that the legislators would still want the maximum age limit applied to bar those who have become 70. It is admittedly a closer question whether they would want to bar, solely because of age, those between 29 and 40. We think they would. Having prohibited the appointment of anyone 29 or older, the legislators would most likely have wished that prohibition to remain effective to the greatest extent possible. The partial invalidation required by the ADEA still leaves section 58(1)(a) applicable to large numbers of potential applicants who have become 29 but not 40. Guided by the presumption of validity and by section 186, we hold that the portion of section 58(1)(a) not invalidated by the ADEA is severable from the invalid portion.
 
 
 14
 We are thus brought to the constitutional issue of whether the statute as it remains after partial invalidation on ADEA grounds in Hahn violates the Equal Protection Clause of the Fourteenth Amendment. The issue has two aspects: whether New York may deny appointment as police officer to the entire class of those who have become 29 and whether it may deny such appointment to the subclasses of those who have become 29 but not become 40 and those who have become 70. The standard, applicable to the entire inquiry, is whether the classifications are "rationally related to furthering a legitimate state interest." Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); see Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979). Since that standard was applied in Murgia and Bradley to provisions ending employment because of age, it must apply to a provision prohibiting the commencement of employment because of age.
 
 
 15
 Though we lack the full trial record on the constitutional issue developed by Chief Judge Curtin in Hahn, see 596 F.Supp. 939, 943-44, or even the affidavits of experts frequently presented at the summary judgment stage of such litigation, we think the constitutional claims can be adjudicated and must be rejected. See Arritt v. Grisell, 567 F.2d 1267, 1271-72 (4th Cir.1977) (upholding constitutionality of 35-year-old cutoff for policemen). The obvious state interest sought to be advanced by the maximum age provision is the recruitment of police personnel physically able to discharge their duties. Denying appointment to those who have become 29 is rationally related to that interest. Though even age 40 was not shown by the defendants in Hahn to be a bona fide occupational qualification for purposes of the ADEA, the Equal Protection Clause mandates no such rigorous inquiry. It is not irrational for the New York legislature to believe that physical abilities to perform the duties of a police officer decline beyond age 29. Even though it is undoubtedly true that many persons above the age of 29 can perform adequately as police officers, the legislature could rationally conclude that individual physical testing of all those 29 and older would yield a proportionately smaller group of qualified candidates than testing of those between 20 and 29. The legislature could therefore decide that the limited financial resources of the State's communities would be best used if physical testing was undertaken only among the group most likely to yield qualified candidates.
 
 
 16
 Once that decision was made, some line had to be drawn. Selecting age 29 may seem to approach the limits of rationality when applicants aged 28 are compared to those aged 29, but two considerations must be borne in mind. First, "in a case like this 'perfection is by no means required.' " Vance v. Bradley, supra, 440 U.S. at 108, 99 S.Ct. at 948 (quoting Phillips Chemical Co. v. Dumas School Dist., 361 U.S. 376, 385, 80 S.Ct. 474, 480, 4 L.Ed.2d 384 (1960)). Second, the legislature was entitled to consider the advantages of limiting appointment to those more likely to remain physically able to perform the duties of a police officer for a substantial period of time. Since Massachusetts was entitled to conclude in Murgia that police officers could be retired mandatorily at age 50, New York is entitled to prohibit appointment beyond age 29 in the hope of benefiting from 20 years of an officer's experience before he reaches 50.
 
 
 17
 The age-29 limit is not rendered irrational by the exceptions New York has made for veterans and for recruitment emergencies. It is not irrational to adjust slightly a policy on police hiring to accommodate both a competing policy of fairness toward veterans and the reality of recruitment difficulties.
 
 
 18
 Nor does the age limit become irrational because the ADEA bars the State from applying its policy to the group between 40 and 70. See Lamb v. Scripps College, 627 F.2d 1015 (9th Cir.1980) (upholding state provision permitting mandatory retirement of tenured private college professors between ages 65 and 70, but not those below 65 or 70 and older). Had it foreseen the partial invalidation of the statute in Hahn, the legislature would have been entitled to conclude that most applicants for police officer who had reached age 29 would be within the subclass that had reached 29 but not 40. The lawmakers could conclude that they would conserve the resources of the communities by eliminating the need for individual physical testing of large numbers of applicants between 29 and 40, even though the ADEA was found in Hahn to require individual testing of the few persons between 40 and 70 who might apply to become police officers.[3] Though it seems odd at first glance to have a state statute that prohibits the hiring of all applicants between 29 and 40 and permits the hiring of qualified applicants between 40 and 70, that apparent anomaly simply reflects the New York policy of not hiring anyone beyond age 29, as modified by the federal policy of barring age discrimination only between ages 40 and 70. It is not irrational for New York to pursue its policy to the fullest extent permitted by federal law. Cf. Washington v. Confederated Bands and Tribes of the Yakima Indian Nation, 439 U.S. 463, 501, 99 S.Ct. 740, 761, 58 L.Ed.2d 740 (1979) (upholding against equal protection attack state law enacted in response to federal law). Age classifications that serve legitimate state policies are not unconstitutional because they are somewhat anomalous.
 
 
 19
 In No. 85-7782, the judgment is affirmed. In No. 85-7820, the judgment is reversed and the cause remanded with directions to enter judgment for the defendants. No costs in either appeal.
 
 
 
 [1]
 Footnote 2 in Hahn described the undertaking by Buffalo as applying to those "between the ages of 30 and 39." Since the representation was obviously intended to fill the gap between those excluded by New York law and those covered by the ADEA, it may be assumed to apply to those who have had a 29th but not a 40th birthday
 
 
 [2]
 The Yakima Indian case involves a complex problem of partial invalidation because the Ninth Circuit encountered a statute that was both over- and underinclusive. The Court initially concluded that the statute denied equal protection because it conferred criminal jurisdiction on fee lands but not on non-fee lands. That ruling precipitated a choice between invalidating the grant of criminal jurisdiction over fee lands or extending such jurisdiction to non-fee lands. The Court chose the former course. Then, having deleted all criminal jurisdiction from the statute, the Court had to decide whether to limit the statute to one granting only civil jurisdiction or to invalidate the entire statute. The Court chose the latter course
 
 
 [3]
 Hahn invalidated section 58(1)(a) as to those between 40 and 70 in a suit in which the defendants were the New York Civil Service Commission and the City of Buffalo. That ruling resulted in a partial invalidation of the statute throughout the State, 770 F.2d at 14, but left open the possibility that communities, other than Buffalo, could demonstrate that their local policies setting maximum age limits on police hiring satisfy the bona fide occupational qualification standard of the ADEA, 29 U.S.C. Sec. 623(f)(1). See Hahn v. City of Buffalo, supra, 770 F.2d at 15 n. 3