**Eric J. FRANCKE, Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF THE TREASURY and James A. Baker, Secretary of the Treasury, Defendants.**

**No. 87 Civ. 2930 (PKL).**

United States District Court, S.D. New York.

Sept. 6, 1989.

Lecci, Wolin & Wolin (Alan E. Wolin, Esq., of counsel), Hicksville, N.Y., for plaintiff.

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y. (Nancy G. Milburn, Esq., of counsel), New York City, for defendants.

LEISURE, District Judge:

Plaintiff Eric Francke ("Francke") contends that the maximum age requirement

for law enforcement officer positions in the U.S. Customs Service violates the Age Discrimination in Employment Act ("ADEA") and the equal protection guarantees of the fifth amendment to the U.S. Constitution. Francke filed suit before this Court requesting injunctive, declaratory, and monetary relief for past and future deprivations of his employment opportunities caused by defendant, the U.S. Department of the Treasury. Francke claims that under the ADEA, the age restriction imposed by the Treasury Department for law enforcement officer positions must satisfy the statutory requirements of a bona fide occupational requirement ("BFOQ"). Plaintiff also argues that the age requirement is not rationally related to a legitimate government purpose and thus violates the federal Constitution.

Defendant moved for summary judgment under Fed.R.Civ.P. 56, arguing that the ADEA does not apply to the case, and that the maximum age requirement is rationally related to a legitimate government objective. Plaintiff opposed defendant's motion and filed a cross-motion for summary judgment.

## FACTUAL BACKGROUND

Plaintiff Eric Francke has been an employee of the U.S. Customs Service, a bureau of the Treasury Department, from 1970 to the present day. He was born on June 29, 1936. In late 1986, at which time he was 50 years old, he applied for a new position in the Customs Service for which agency policy had set a maximum entry age of 34. Francke was turned down for the job based on his age alone without consideration of his other attributes and abilities. He then brought this suit to court. Before detailing plaintiff's experience, a brief history of the maximum hiring age is in order.

In 1974, Congress passed Public Law 93–350, 88 Stat. 355, which in part authorized federal agencies to set maximum hiring ages for "law enforcement officer" positions. 5 U.S.C. § 3307(d). The objective of the legislation was to allow agencies to staff physically exacting jobs with men and women of relative youth. Soon thereafter the Treasury Department began to act under the statute, first classifying which department jobs qualified as "law enforcement officer" positions and then deciding upon an appropriate maximum hiring age.

The definition of "law enforcement officer" is contained in 5 U.S.C. § 8331(20) and reads in part that " 'law enforcement officer' means an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States...." The Treasury Department reviewed the responsibilities of all its staff positions related to law enforcement and decided that the GS–1811 series of posts corresponded with the statutory definition. The Treasury then moved ahead under 5 U.S.C. § 3307(d) with the establishment of a maximum hiring age for all GS–1811 series positions.

The Treasury Department asked that its bureaus submit detailed information on the nature of its GS–1811 series positions such as precise job responsibilities, histories of injuries, and requests for disability payments. The agency's findings were that the GS–1811 jobs involved hazardous conditions, irregular work routines, tension, fatigue, and the need for extraordinary physical stamina. Based on this data, a maximum hiring age of 34 was set for all GS–1811 series positions. Declaration of Sharon Eller, Supervising Personnel Management Specialist, U.S. Department of the Treasury, at 6–8; U.S. Department of the Treasury Personnel Management Manual, chapter 338.A.

Under 5 U.S.C. § 3307(d) as it stood in 1976, a federal agency establishing a maximum hiring age for law enforcement officers had to seek the concurrence of the Civil Service Commission ("CSC").[1] The Treasury Department made such a request and received the approval of the CSC in a letter dated August 31, 1976. Thus a maxi-

**1.** At present, approval for agency action under section 3307(d) is given by the organizational successor to the CSC, the Office of Personnel Management.

mum hiring age of 34 became official Treasury Department policy for all GS–1811 positions.

Plaintiff Eric Francke is currently employed as a National Import Specialist by the Customs Service. He has worked for the Customs Service continually since 1970, first as a Security Officer from 1970–1973, then as a Liquidator from 1973–1976, and finally as a National Import Specialist from 1976 to the present date. The post of Security Officer is classified as a law enforcement officer and thus is subject to the Treasury Department's maximum hiring age of 34. Francke began his stint as a Security Officer before the age policy was in effect, but he would have qualified as he was under 35 at the time. The positions of Liquidator and National Import Specialist are not law enforcement officer posts and thus are not subject to the age policy.

In late 1986, while serving as National Import Specialist, plaintiff applied for the position of Criminal Investigator in the Customs Service, a GS–1811 series law enforcement post subject to the maximum age requirement of 34. The vacancy announcement for Criminal Investigator to which Francke responded contained a clear statement of the age requirement. At the time of application in late 1986, he was 50 years old. In response to his application, the Customs Service notified Francke on December 3, 1986 that he had not been considered for the post due to his age. There is nothing in the record to dispute plaintiff's contention that his individual qualifications were not considered, and that his application was denied solely because his age exceeded the maximum age requirement.

On January 22, 1987, plaintiff filed a formal complaint with the Complaints Center of the Treasury Department alleging unlawful age discrimination. On April 3, 1987, the Director of the Complaints Center sent a letter to plaintiff's counsel rejecting the complaint. The Director ruled that the Treasury Department could establish a maximum hiring age for law enforcement officer positions under 5 U.S.C. § 3307(d) quite apart from the requirements of the ADEA. Letter from Dorian Morely, Director, Regional Complaints Center, U.S. Department of the Treasury, to Alan Wolin, counsel for plaintiff, April 3, 1987. Plaintiff thereafter filed this suit in federal court, and both parties moved for summary judgment.

## DISCUSSION

### A. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.... [i]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court then must determine whether there does indeed exist a genuine issue as to any material fact; "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2510; *see also R.C. Bigelow, Inc v. Unilever N.V.*, 867 F.2d 102 (2d Cir.1989). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). *See also Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d

506 (2d Cir.1989). However, Rule 56 does not require that the moving party support its motion with affidavits or other similar materials which negate the opponent's claim. Rather, "the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* The burden on the moving party will be "discharged by 'showing'— that is, pointing out to the District Court— that there is an absence of evidence to support the nonmoving party's case." *Id.* 477 U.S. at 325, 106 S.Ct. at 2554.

Indeed, once a motion for summary judgment is properly made, the burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511. Because the District Court must determine "whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," *id.*—the nonmoving party must produce, at the summary judgment stage, "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* While the Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought," *Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir. 1975) (citations omitted), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 13, 89 L.Ed.2d 538 (1986) (citations omitted).

Ultimately, "[i]n considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 25, 91 L.Ed.2d 202 (1986)), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

## B. STATUTORY ISSUE

The statutory issue in this case is entirely appropriate for resolution upon motion for summary judgment. The essential facts are undisputed: the Treasury Department set a maximum hiring age for law enforcement officers at 34, and plaintiff was rejected solely because he was over the maximum age. All that need be done is to decide which of the two statutes, the ADEA or 5 U.S.C. § 3307(d), governs the case. Unless the Court decides that the Treasury Department must justify age as a BFOQ for law enforcement officer positions, a full trial is not needed.

In 1967, Congress passed the Age Discrimination in Employment Act to combat improper treatment of federal employees on account of age. The current version of the statute states in part that "All personnel actions affecting employees or applicants for employment who are at least 40 years of age ... shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). The statute further says that exemptions to the section may be established by the Equal Opportunity Employment Commission only "on the basis of a determination that age is a bona fide occupational qualification necessary to the performance of the duties of the position." 29 U.S.C. § 633a(b).[2] The purpose of the overall statutory scheme is to prevent arbitrary discrimination in the government workplace on account of age, and to compel the employer to focus on the individual's actual abilities given the responsibilities of the particular job.

■ The central statutory issue in this case concerns the relationship between the

---

**2.** Demands for exemptions were originally taken to the Civil Service Commission, but the procedure was changed in 1979. 43 Fed.Reg. 19807, 44 Fed.Reg. 1053.

ADEA and the subsequently passed federal statute at 5 U.S.C. § 3307(d) which allows federal agencies to set maximum hiring age limits for law enforcement officer positions. This latter provision states that "The head of any agency may ... determine and fix the minimum and maximum limits of age within which an original appointment may be made to a position as a law enforcement officer or firefighter, as defined by section 8331(20)...." 5 U.S.C. § 3307(d). If this special authority is found to create an exception to the requirements of the ADEA, then the Treasury Department need not show that age is a BFOQ necessary for law enforcement officer positions within the Customs Service. But if the ADEA still applies to the exercise of 3307(d) authority, then plaintiff is justified in demanding such a showing.

The principal case on point is the decision of the District of Columbia Circuit Court in *Stewart v. Smith*, 673 F.2d 485 (D.C.Cir. 1982).[3] In *Stewart*, the D.C. Circuit ruled that 5 U.S.C. § 3307(d) does create an exception to the ADEA. The Bureau of Prisons ("BOP") had exercised its power under section 3307(d) and set a maximum entry age of 34 for all jobs within prisons. This policy had been concurred in by the Civil Service Commission. The plaintiffs in *Stewart*, who had been denied prison jobs on account of their age, contended that section 3307(d) authority was subject to the

requirements of the ADEA and that the BOP had to show that age was a BFOQ for prison employees. The *Stewart* court held that such a showing was not necessary, and that the BOP had merely to show that its maximum hiring age was reasonably related to the legislative objective of section 3307(d). *Stewart* at 494.

Section 3307(d) was passed within a larger statutory scheme[4] which sought to keep the age of federal law enforcement personnel low and thus ensure their physical vigor.[5] Other statutory provisions passed in tandem with section 3307(d) created mandatory retirement at age 55 or after 20 years of service, whichever occurs last, and set up incentives for early retirement through the annuity system.[6] In addition, Congress created special procedures for agencies to follow to decide on a reasonable hiring age. Nowhere was any mention made of ADEA limitations applying to the section 3307(d) power of federal agencies.

The first task of this Court is to discover whether section 3307(d) and the ADEA may be reasonably interpreted as consistent with each other. *See United States v. Will*, 449 U.S. 200, 221–22, 101 S.Ct. 471, 483–84, 66 L.Ed.2d 392 (1980). Nothing in section 3307(d) expressly removes it from the ambit of the ADEA. It would be possible to require federal agencies to first follow the procedures set out in section

---

**3.** *Stewart* has been mentioned with implicit approval by several other courts in cases involving the application of the ADEA to state agency employees. *Orzel v. City of Wauwatosa Fire Department*, 697 F.2d 743, 749 (7th Cir.1983), *cert. denied* 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983) (citing *Stewart*, the court stated that "As a legal matter, mandatory retirement schemes approved by Congress for federal employees are not subject to the strict requirements of the ADEA."); *EEOC v. County of Los Angeles*, 706 F.2d 1039, 1041 (9th Cir.1983), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984) ("*Stewart* held that ... no BFOQ was necessary to justify the maximum age entry requirements for federal law enforcement officers."); *Mahoney v. Trabucco*, 738 F.2d 35, 41 (1st Cir.1984) ("We recognize that Congress need not adhere to ADEA standards in setting mandatory retirement ages for federal personnel.").

Plaintiff cites only one case which holds that a person over age 35 who was denied a GS–1811

series position in the Treasury Department on account of his age was justified in demanding an individual determination of his fitness under the ADEA. *Mang v. Blumenthal*, 26 FEP Cas. 1353 (W.D.Pa.1981). First, this opinion does not mention section 3307(d), and the relationship between that provision and the ADEA was not considered by the court. Second, *Mang* was decided the year before *Stewart v. Smith*, and thus the court was not able to benefit from the analysis of the D.C. Circuit. This court therefore declines to follow the opinion in *Mang*.

**4.** *See* discussion of Public Law 93–350 in "Factual Background," *supra*.

**5.** *Stewart* at 487–88; *See* H.R.Rep. No. 93–463, 93d Cong., 1st Sess. 3–4 (1973); S.Rep. No. 93–948, 93d Cong., 2nd Sess. 2 (1974), U.S.Code Cong. & Admin.News, 1974 p. 3698.

**6.** 5 U.S.C. §§ 8335(b), 8336(c)(1), 8339(d)(1).

3307(d) (determination by the specific agency and concurrence by the Office of Personnel Management) and then have the Equal Employment Opportunity Commission determine whether age is a BFOQ under section 633a(b) of the ADEA. The *Stewart* court found this reading of the statute "awkward" and declined to interpret Congress's actions as creating a "dual procedure" whereby three divisions of the federal government would participate in setting the maximum hiring age. *Stewart* at 492.

This Court concurs with the D.C. Circuit's interpretation of 5 U.S.C. § 3307(d). It would not make sense for Congress, in an attempt to lower the age of federal law enforcement officials, to make the process more burdensome rather than streamline it. Congress was operating under a "theory that [law enforcement] jobs involve special concerns that require consideration of factors not ordinarily accounted for in the ADEA's independent scheme for evaluating age restrictions." *Stewart* at 492. Thus section 3307(d) was meant to lift a unique category of jobs out of the ADEA.

Plaintiff argues that non-application of the ADEA "would essentially eliminate all standards which should be applied in determining the propriety of a maximum entry age requirement. It would provide the rulemaker with, what would be tantamount to the unfettered discretion to blindly implement an age requirement without any real regard to its usefulness." Plaintiff's brief at 10–11. It is highly unlikely that federal agencies would abuse their 3307(d) power as suggested by plaintiff. The studies conducted by the Treasury Department prior to setting the maximum hiring age show that there was no blind implementation of an arbitrary rule. Also, the concurrence of the Office of Personnel Manage-

ment prevents agencies from unilaterally deciding on maximum ages. And as discussed above, one of the very objectives of Public Law 93–350 was to increase the discretion of federal agencies in setting policies to keep the ages of law enforcement personnel low. Thus plaintiff's policy arguments are in contradiction to the aims of Congress.[7]

■ Plaintiff also argues that because he was employed as a law enforcement officer in the Customs Service between 1970 and 1973 while he was under age 35, the Treasury Department policy enacted under section 3307(d) does not apply to him. The exact text of 5 U.S.C. § 3307(d) states that agencies may set maximum ages for an "original appointment" to a law enforcement officer position. Francke argues that his application for the post of Criminal Investigator in 1986 was not an original appointment under the statute. This is not a sensible reading of the law. If it were true, then simply by holding a law enforcement job while under age 35 an employee could guarantee himself the chance to apply for law enforcement positions throughout his career. Such an interpretation would create a significant and irrational loophole in the statutory scheme of Public Law 93–350. This Court therefore holds that section 3307(d) does apply to plaintiff.

Plaintiff's argument that his rejection for the post of Criminal Investigator is subject to the ADEA must fail as a matter of law. Section 3307(d) creates a clear statutory exception to the ADEA, and thus there is no issue as to whether age is a BFOQ for law enforcement officer positions which need be litigated at trial.

## C. CONSTITUTIONAL ISSUE

■ Plaintiff argues that the Treasury Department's maximum hiring age policy

---

7. Contrary to the assertions of plaintiff, the Federal Personnel Manual actually supports the position of defendant. Subchapter 5.1 of the current manual, which was in effect when Francke applied for the position of Criminal Investigator, clearly states that 5 U.S.C. § 3307 creates an exception to the ADEA.

Plaintiff also argues that a reference to public safety jobs in regulations under the ADEA demonstrates that Congress intended that jobs relat-

ed to public safety, such as law enforcement officer positions, be included under the ADEA. 29 C.F.R. 1625.6(b). As defendant points out, however, these regulations were promulgated under the ADEA before the passage of Public Law 93–350 and could not have been intended to supercede subsequent legislation creating exceptions to the ADEA for law enforcement personnel.

for law enforcement officers violates the equal protection guarantees in the fifth amendment to the U.S. Constitution. Francke contends that the application of the policy against him was arbitrary, capricious, and amounted to unconstitutional age discrimination.

The Supreme Court has ruled that to withstand equal protection scrutiny, an age-based classification must be rationally related to a legitimate government objective. *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979) (in upholding a mandatory retirement age for Foreign Service employees, the Court stated "we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational"); *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (holding that a state early retirement statute is valid only if rationally related to a legitimate state interest). The Second Circuit has held that a maximum hiring age policy, like a mandatory retirement age policy, should be examined under a rational basis standard. *Doyle v. Suffolk County*, 786 F.2d 523, 528 (2nd Cir.1986) (rejecting a constitutional challenge to a police department maximum hiring age of 29 years old).

In *Doyle*, the Second Circuit awarded summary judgment to the defendants, ruling that even without the full record of a trial it could adjudicate and reject plaintiff's claims. *Doyle* at 528. Based on the affidavits and exhibits that this Court has before it concerning the Treasury Department's maximum hiring age policy, it can likewise make a decision without a trial.

First, it cannot be disputed that the Treasury's desire to maintain a physically vigorous law enforcement staff is a legitimate government objective. As the Treasury Department discovered in its survey, all its law enforcement jobs involve a litany of physical challenges including tension, fatigue, hazardous duty situations, and extraordinary physical stamina. Any policy or rule aimed at ensuring the ability of law enforcement officers to meet these challenges must be legitimate.

Second, the maximum hiring age policy of 34 as implemented by the Treasury Department is rationally related to its legislative purpose. In conjunction with the mandatory retirement provisions, the hiring age policy does keep the average age of law enforcement personnel low. In the majority of cases, a person in his thirties or forties will be more physically vigorous than a person in his fifties or sixties. It is inevitable that not all persons fit with this generalization, but the policy need not be perfect in this respect. The Supreme Court in *Vance* ruled that even if the policy is to some extent overinclusive and underinclusive, it can still satisfy the requirements of equal protection. *Vance*, 440 U.S. at 108–09, 99 S.Ct. at 948–49.

Plaintiff Francke argues that he is in excellent physical condition and is completely able to fulfill the duties of Criminal Investigator. Even if this assertion was proved with certainty at trial, this Court would have to conclude that Francke would still have to abide by a policy which is on the whole rationally based on its legislative aims. Plaintiff cannot possibly show that the maximum hiring age policy is sufficiently unrelated to ensuring a vigorous workforce that it should be invalidated.

## CONCLUSION

For these reasons defendant's motion for summary judgment is granted in its entirety, and plaintiff's cross-motion for summary judgment is therefore denied.

SO ORDERED.