**James C. ARRITT, Plaintiff,**

v.

**Elwood G. GRISELL et al., Defendants.**

**Civ. A. No. 75–46–W.**

United States District Court,
N. D. West Virginia,
Wheeling Division.

Oct. 4, 1976.

Patrick S. Cassidy, Wheeling, W. Va., for plaintiff.

Thomas White, Moundsville, W. Va., for defendants.

## MEMORANDUM ORDER

MAXWELL, Chief Judge.

This action was commenced on December 30, 1975, by James C. Arritt, whose application for the position of police officer in Moundsville, West Virginia was refused on the ground that he was older than thirty-five years of age and was, for that reason, ineligible to take the required examination.[1] The complaint is in two counts, the first alleging a violation of the Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. § 621 *et seq.*, and the second asserting a claim under 42 U.S.C. § 1983, with jurisdiction in the latter count founded on 28 U.S.C. § 1343. The defendants are the three members of the Police Civil Service Commission of the City of Moundsville and the City of Moundsville. The plaintiff seeks a mandatory injunction compelling the defendants to hire him, unpaid wages resulting from his non-employment, compensatory damages, liquidated damages, and attorney's fees and costs.

The defendants filed a motion to dismiss on the ground that the Age Discrimination in Employment Act is unconstitutional insofar as it is sought to be applied to the States and their political subdivisions. The City of Moundsville also asserted that it should be dismissed on the ground that it has no control over the Police Civil Service Commission, and therefore is not a necessary party.

The plaintiff filed a motion for summary judgment, supported by a "statement of

---

1. West Virginia Code § 8–14–12 (Michie 1976 Repl. Vol.) establishes an 18–35 year age limit for applications for original appointment to the police force of any Class I or Class II city.

material facts not in dispute" and a memorandum of points and authorities. The defendants filed an "answer" to the motion for summary judgment, supported by the affidavit of J. Rodger Yoders, the Chief of Police of the City of Moundsville, and a brief. In this pleading the defendants seek the entry of summary judgment in their behalf, or, in the alternative, a determination that the plaintiff is not entitled to summary judgment because of the existence of material facts which are genuinely in issue.

Counsel were afforded the opportunity to present oral argument on the pending motions. At that time, although no evidence was offered, certain additional stipulations, which need not be recited here, were made, and the Court took the matter under advisement.

The Court is of opinion that the plaintiff's motion for summary judgment must be denied and that the defendants' motion to dismiss, treated as a cross-motion for summary judgment, must be granted.

### THE AGE DISCRIMINATION IN EMPLOYMENT ACT

The Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (hereinafter referred to as the ADEA), was enacted into law in 1967, and had as its purpose ". . . to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). The prohibitions in the Act apply to the 40–65 age group, 29 U.S.C. § 631. States and their political subdivisions were excluded from coverage of the Act as originally passed, but in 1974 the Act was amended to extend its applicability to "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State . . . ." 29 U.S.C. § 630(b)(2).

The same legislation that expanded the coverage of ADEA also extended, in different sections, the coverage of the Fair Labor Standards Act to the States and their political subdivisions. 29 U.S.C. § 203(d) and (x). These provisions were struck down as being beyond the authority granted to the Congress under the Commerce Clause. *National League of Cities, et al. v. Usery,* —— U.S. ——, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

■ The plaintiff, and to a lesser degree the defendants, suggest that the present posture of this case requires that the Court determine, in the first instance, whether *National League of Cities, supra,* has the effect of rendering unconstitutional the 1974 amendments extending the application of ADEA to the States and their political subdivisions. The Court is of opinion, however, that this question should be reached only if the case can not be disposed of on the basis of statutory construction or general law.[2]

Section 4(f) of the ADEA, 29 U.S.C. § 623(f), provides in pertinent part that

> (f) It shall not be unlawful for an employer,
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (1) to take any action otherwise prohibited . . . where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business . . . .

The defendants contend that the job which the plaintiff seeks comes within the above quoted statutory defense. The affidavit of the Chief of Police of the City of Moundsville, alluded to earlier, is offered in support of this contention. This affidavit describes the job requirements and skills necessary for the job of police officer which Chief Yoders believes decline with age, including driving at high speeds, shooting weapons with great accuracy, apprehension of criminals by force, walking and standing for long periods of time and the ability to respond quickly and wisely in emergency

---

**2.** *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J. concurring); *Electronic*

*Components Corporation of North Carolina v. National Labor Relations Board,* 546 F.2d 1088 (4th Cir. 1976).

situations. The affidavit also points out that the more arduous assignments and schedules generally are given those officers with the least seniority, without regard to age. Other matters which appear to be valid and persuasive, but which will not be recited here, are also set forth in the affidavit.

The plaintiff's position is that the burden of proof is on the employer asserting the bona fide occupational qualification defense, and that the evidence in this case, at least at this stage, is far too scanty to sustain that burden. The plethora of evidence, including expert testimony, adduced in *Hodgson v. Greyhound Lines, Inc.*, 499 F.2d 859 (7th Cir. 1974) and *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224 (5th Cir. 1976) (both cases in which the bona fide occupational qualification defense was successfully asserted) is emphasized by the plaintiff.

In the *Greyhound* case, the Court pointed out that the position of intercity bus driver is one which requires consideration of not only the welfare of the job applicant, but the well-being and safety of bus passengers and other highway motorists. 499 F.2d at 861. The defendants contend, and it can hardly be doubted, that the safety and well-being of the general public in the City of Moundsville is substantially affected by the qualifications (including the physical ability to respond to the demands of the job) of its municipal police officers.

One of the factors considered most persuasive by the Court in *Greyhound* was "the degenerative physical and sensory changes in a human being brought on by the aging process which begins in the late thirties in the life of a person." In *Massachusetts Board of Retirement, et al. v. Murgia,* —— U. S. ——, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), referred to in greater detail *infra,* the Court noted that:

> Since physical ability generally declines with age, mandatory retirement at 50 serves to remove from police service those whose fitness for uniformed work presumptively has diminished with age.

The aging process and the declining physical ability that is a part of it is not unique to the *Greyhound* case or the *Murgia* case, but is universal in nature, and could not be seriously questioned in the plaintiff's proffered counter-affidavit.[3] A minimal increase in risk of harm to others is all that need be shown to justify the maximum hiring age requirement here in issue. 499 F.2d at 863. Although there may be a paucity of evidence here in comparison with that presented in *Greyhound* and *Tamiami,* it is sufficient to convince this Court that the maximum hiring age of 35 for municipal police officers does not constitute arbitrary age discrimination as contemplated by ADEA.

For these reasons, the Court is of opinion that the plaintiff's claim for relief based on ADEA must fail.

## THE CIVIL RIGHTS ACT (§ 1983)

As noted earlier, in the second count of the complaint, the plaintiff asserts that the defendants, acting under color of state law, deprived him of his right to equal protection of the law as guaranteed by the Fourteenth Amendment.

In *Massachusetts Board of Retirement, et al. v. Murgia, supra,* the plaintiff, an officer of the Uniformed Branch of the Massachusetts State Police, challenged the Massachusetts statute which made his retirement at age 50 mandatory on the ground that the operation of that statute denied him equal protection of the laws. In that case, as in Count II of the complaint here, the equal protection denial was alleged to be in violation of 42 U.S.C. § 1983, and jurisdiction was invoked under 28 U.S.C. § 1343. (*Murgia* also sought declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.)

The Supreme Court held that the statute in issue did not deny the plaintiff equal protection of the law. Two principles emerge from the decision which appear to

---

**3.** At the hearing on this matter, counsel for the plaintiff sought leave to file a counter-affidavit if the Court intended to pass on the bona fide occupational qualification defense.

be pertinent to the second Count of the complaint in this case.

 First, the Court reaffirmed that equal protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar advantage of a suspect class. The mandatory retirement age of 50 was found to involve neither of these elements because (1) the right of governmental employment *per se* is not fundamental, and (2) the class of uniformed state police officers over the age of 50 does not constitute a suspect class for purposes of equal protection analysis. Thus, the Court found it

> . . . unnecessary to subject the State's resolution of competing interests . . . to the degree of critical examination that . . . cases under the Equal Protection Clause recently have been characterized as "strict judicial scrutiny".

 The non-applicability of the "strict scrutiny" standard resulted in examination of the classification in the statute under attack on the rational basis standard. The Court found that the mandatory retirement at age 50 provision rationally furthered the purpose identified by the state, namely protection of the public by assuring physical preparedness of its uniformed police.

 While the record in this action does not include a statement of the purpose sought to be furthered by the 18–35 age limit in Code § 8–14–12, *Murgia* and *Greyhound* offer support for general recognition of the proposition that physical ability generally declines with age. In the absence of any indication that the statutory age limits on hiring are not rationally related to the objective of providing a police service comprised of physically fit members, the Court believes that the reasoning of the *Murgia* case requires that the plaintiff's § 1983 claim be rejected.

Accordingly, for the reasons set forth above, the plaintiff's motion for summary judgment is denied, summary judgment in favor of the defendants is granted, and this action is dismissed.

It is so ORDERED.