The Honorable George Hopkins State Senator Box 78, Harver Hills Malvern, Arkansas 72104
Dear Senator Hopkins:
This is in response to your request for an opinion on the legality of Rule and Regulation 32-1.14 of the Arkansas Handbook for Municipal Officials, which provides as follows:
 (B)(9)(a) No person shall be eligible for appointment to any position on the fire department who has not arrived at the age of twenty-one (21) or who is over thirty-one (31) years of age;
 (ii) No person shall be eligible for appointment on the police department affected by this chapter who has not arrived at the age of twenty-one (21) years or who is over the age of forty-five (45) years;
You also ask if persons who are beyond these age limits should be denied an application, and should be denied the opportunity to take the civil service test.
The rule you have cited is also an Arkansas statute, and is codified at A.C.A. 14-51-301 (b) (Supp. 1987). The issue of whether these age limitations are "legal" is a difficult one, because thus far there does not seem to be a consensus on the issue in the federal or state courts. Different courts have reached different conclusions based upon the evidence before them.
A prospective applicant who does not meet the age limitations could allege two grounds for striking down the statute. The first is a challenge brought under the Equal Protection Clause of the United States Constitution. (United States Constitution, Amendment 14, 1.) A prospective applicant would, in my opinion, be unsuccessful in challenging the statute on this ground. Under an equal protection challenge of this nature, the reviewing court would apply only the "rational basis" standard; meaning that the court, to uphold the statute, would only have to find that the age limitation bears a rational relation to the objective of the law. This is so because employment is not a fundamental right, and age itself does not form the basis of a suspect classification. MASSACHUSETTS BOARD OF RETIREMENT v. MURGIA, 427 U.S. 307 (1976). Courts are very reluctant to strike down statutory provisions under this standard, and in fact, many courts have held in cases involving age limitations for police officers and firefighters that similar statutes do not violate the Equal Protection Clause. SEE, E.G., ARRITT v. GRISELL 567 F.2d 523 (2nd Cir. 1986) CERT DENIED. 479 U.S. 825 (1986); KLOTSCHE v. CITY OF NEW YORK,621 F. Supp. 1113 (D.C. N.Y. 1985); MUNTEANU v. CITY OF BARBERTON,655 F. Supp. 1357 (N.D.Ohio 1987); SOBIERALSKI v. CITY OF SOUTH BEND,479 N.E.2d 98 (Ind. 1985); and FEIMER v. WARD, 487 N.Y.S.2d 458,127 Misc.2d 853 (1984). CF. McMAHON v. BARCLAY, 510 F. Supp. 1114
(S.D.N.Y. 1981).
Thus, in my opinion, A.C.A. 14-51-301 (b) is not subject to a successful challenge based upon the Equal Protection Clause. The closer question is whether it might be successfully challenged under the "Age Discrimination in Employment Act", 29 U.S.C. § 621-634 (1982).[1] The "Age Discrimination in Employment Act" ("ADEA"), prohibits employer discrimination on the basis of age. The ADEA, however, only applies to prospective employees who are forty (40) years old to seventy (70) years old. A prospective applicant for a position on the police force or in the fire department who is forty to seventy years old may be protected under the provisions of the act. There is, however, an exception in the act to the prohibition against employer age discrimination which is found at 29 U.S.C. § 623 (f). It provides as follows:
 It shall not be unlawful for an employer . . . to take any action otherwise prohibited under . . . this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business. . . .
The courts employ a two-pronged legal test in determining whether an age classification qualifies as an "bona fide occupational qualification" or ("BFOQ"). The test to be applied is as follows:
 (1) the classification must be reasonably necessary to the essence of the employer's business;
 (2) the employer must have reasonable cause, that is, a factual basis, for believing EITHER that all or substantially all persons within the excluded class would be unable to perform safely and efficiently the duties of the job OR that it is impossible or impractical to deal with persons over the age limit on an individualized basis. [Emphasis original.]
E.E.O.C. v. UNIV. OF TEXAS HEALTH SCIENCE CENTER, 710 F.2d 1091 at 1093 (5th Cir. 1983), CITING USERY v. TAMIAMI TRAIL TOURS, INC.,531 F.2d 224 (5th Cir. 1976).
In order to determine how this test has been applied to different factual situations, reference to relevant case law applying it is helpful.
The application of this test has lead to an unusual situation in the Second Circuit. In HAHN v. CITY OF BUFFALO, 770 F.2d 12 (2nd Cir. 1985), the court affirmed the trial court's finding that an age limitation of twenty-nine for city police officers violated the ADEA. The court, however, seemed unhappy with the nonuniformity which results as each court decides the issue on the particular facts of before it. As the court noted:
 This case, however, presents a broader inquiry: Whether being less than 40 is a BFOQ for the position of municipal police officer. One might think that for inquiries of such scope it would be preferable to have an administrative agency such as the EEOC make the determination on the basis of an extensive hearing record, with the result, after judicial review, normally binding throughout the country except in situations where a plaintiff could claim that policing in a particular community was less arduous than in a typical community or where a municipal employer could claim the opposite. It seems somewhat anomalous for the lawfulness of maximum age limits on police hiring to depend on the particular evidence presented at various court trials throughout the country. [Citations omitted.] Nevertheless, the ADEA accords each person between 40 and 70 the right to challenge an adverse employment decision based on age and thereby obligates each employer to defend such challenges in separate actions, despite the application of the same limit to similar or even identical occupations in different communities. Moreover, Congress has not provided for agency determination of whether a particular age is a BFOQ for a particular occupation. The District Court was therefore obliged to undertake the extensive inquiry it made, and our task is limited to determining whether its findings are clearly erroneous and whether relevant legal standards were correctly applied.
770 F.2d at 15-16.
The court in HAHN, above, was not faced with any constitutional issues, as they were not appealed. Later, the court WAS faced with these constitutional issues in DOYLE v. SUFFOLK COUNTY, SUPRA. There the Second Circuit held that the twenty-nine year age limit for police officers did not violate the Equal Protection Clause. The result of that decision, when read in conjunction with the HAHN decision, was to prohibit the police department from refusing to appoint persons between the ages of 40 and 70 based on age, but allowing it to refuse to hire new police officers between the ages of 29 and 40. This result seems absurd, but stems from the fact that the ADEA only protects those 40 to 70 years of age.
In the Fourth Circuit, the district court, (ARRITT v. GRISELL,421 F. Supp. 800 (N.D.West. Va. 1976)), held that a maximum hiring age limitation of thirty-five for municipal police officers did not violate the ADEA. The Fourth Circuit, however, remanded the case because the district court failed to apply the proper two-pronged test in determining whether age was a BFOQ for the job. ARRITT v. GRISELL, 567 F.2d 1267 (4th Cir. 1977).
The Fifth Circuit, in EEOC v. TEXAS HEALTH SCIENCE CENTER, SUPRA, held that a forty-five year age limitation for campus police officers did not violate the ADEA. The court there noted that:
 There was consistent testimony at trial that physical strength, agility and stamina are important to the training and performance of campus policemen. George Hess, Jr., chief of police at the University of Houston, indicated on cross-examination that physical training is a very important aspect of training a police officer. Dr. Carl Page, a physician, testified that forty-five is an unwise age for an individual to start as a rookie policeman because his chances of being injured, developing joint problems, or having coronary disease or strokes would be greater than for a twenty-five or thirty-five year old policeman, and that the older officer would lack the physical stamina and prowess of a young officer. . . . Dr. Paul Richard Jeanneret, a management consultant, industrial psychologist and former policeman, had conducted extensive personnel studies for the Houston Police Department and the Texas Department of Public Safety, both of whom have hiring ceilings of thirty-five. He testified that these age requirements were recommended and justified because supervisory skills, proficiency at pursuit driving, physical agility and marksmanship declined when troopers approached the age of forty or forty-five.
710 F.2d at 1095.
It was also stated in TEXAS HEALTH, SUPRA that "[n]umerous witnesses testified that the job of campus policeman is similar to that of a city policeman."
Finally, the Ninth Circuit, in E.E.O.C. v. COUNTY OF LOS ANGELES,706 F.2d 1039 (1983), held that a maximum hiring limit of thirty-five for deputy sheriffs and fire department helicopter pilots violated the ADEA. The district court, in the decision below, found that the county had met its burden in establishing that strength, agility, good reflexes and ability to run appreciable distances and lift heavy objects were reasonably necessary to the jobs. The lower court found, however, that "there is no strict relationship between age and physical ability", and that physical performance tests can easily distinguish those persons who lack them. 526 F. Supp. at 1139. The Ninth Circuit affirmed these findings.
Although in the cases discussed above, the courts were faced with different maximum ages, each was charged under the ADEA with the task of determining whether the limitation was discriminatory as applied to persons age 40 to 70. The Second Circuit held that a twenty-nine year maximum violated the ADEA with respect to persons 40 to 70. The Ninth Circuit found that a thirty-five year limit violated the ADEA with respect to persons in this age group. The Fifth Circuit found that a forty-five year limit did NOT violate the ADEA as it applies to persons 40 to 70 years of age. And the Fourth Circuit simply remanded to apply the proper test.
It is thus apparent that the only circuit case upholding an age limitation against a challenge under the ADEA involved a forty-five year age limitation for municipal police officers. This case is thus likely the most analogous to the Arkansas statute which sets a maximum age of forty-five for new appointments to the police department. It may be then, that the forty-five year limit for police officers would be "legal", and as a result applicants over this age could properly be denied application and be prohibited from taking the civil service test.
It is, however, extremely difficult to predict what the United States Supreme Court would say on this issue in general, and even more difficult to predict what it would say when faced with our particular Arkansas statute. There appears to be a disagreement between the circuits on the issue, at least with regard to the application of the test to particular factual situations.
It should be noted that the thirty-one year age limit for firefighters, although we know that it would likely be upheld against an equal protection challenge, (MUNTEANU v. CITY OF BARBERTON, SUPRA), might be the more vulnerable provision if faced with an ADEA challenge. This conclusion is based predominantly upon the fact that this age limit is much more restrictive than the one for police officers.
It is unfortunate that a more definite answer cannot be given to your question. But, as the Second Circuit pointed out in HAHN, the question of whether a particular age limitation violates the ADEA will depend upon the facts established at each trial of the issue. It is possible that the age limitations contained in A.C.A.14-51-301 (b) would be struck down under the ADEA, although it is my opinion that the limitation governing firefighters might be the more vulnerable provision.
With regard to your second question, (whether persons beyond the age limitations should be denied an application and be denied taking the civil service test), it is my opinion that under current Arkansas law, these persons can properly be denied these opportunities because they are ineligible for the positions. It must be recognized, however, that such a refusal, if made to a prospective applicant between the age of 40 and 70, could give rise to a successful legal challenge under the ADEA.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
[1] It should be noted that there is a similar Arkansas State Act, codified at A.C.A. 21-3-201 ET SEQ. Because it is very similar to the Federal Act, and because the federal act will control with respect to any conflict, our analysis will focus on the federal act. The Second Circuit did not find the district court's conclusions "clearly erroneous" and thus affirmed the district court's decision that the limit violated the ADEA.