**Paul S. DUMONT, Plaintiff,**

v.

**ADMINISTRATIVE OFFICER, United States District Court for the Southern District of New York, Defendant.**

No. 95 CV 0889.

United States District Court,
S.D. New York.

Feb. 23, 1996.

Michael H. Sussman, Goshen, NY, for Plaintiff.

Marianne O'Toole, Asst. U.S. Atty., New York City, for Defendant.

### MEMORANDUM DECISION
### AND ORDER

PARKER, District Judge.

The plaintiff, Paul S. Dumont ("Dumont"), instituted this action against the Administrative Officer of the United States District Court for the Southern District of New York on the ground that he was denied consideration for the position of federal probation officer in violation of the Age Discrimination in Employment Act of 1967 ("the ADEA"), 29 U.S.C. §§ 621–634 (1985) and the equal protection clause of the Fourteenth Amendment, applicable against the United States through the due process clause of the Fifth Amendment. In his complaint, Dumont seeks compensatory damages, consideration for employment, back pay with interest, fees, and any other appropriate relief.

Before the Court is Defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56 or alternatively for dismissal for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). Additionally we consider Dumont's motion pursuant to Fed.R.Civ.P. 65(a) for a preliminary injunction directing defendant to consider individuals over the age of forty, including the Dumont, for the position of federal probation officer. Because the Court has considered the declarations and other documentary evidence submitted by the parties, it will treat the motion as one for summary judgment.

### BACKGROUND

Plaintiff, Paul S. Dumont, has brought an action against the Administrative Officer of the United States District Court for the Southern District of New York ("the Administrative Officer"), an agent of the United States doing business in this judicial district. Pursuant to 18 U.S.C. § 3602, the District Court is responsible for the hiring of Probation Officers.[1] Plaintiff is suing the Administrative Officer as an agent of the District Court.

On January, 5, 1995, Dumont submitted a completed application for the position of a federal probation officer. His application revealed that he was forty-three years old. Since that time, the District Court has not processed Dumont's application.[2]

---

1. That statute provides:

 A district court of the United States shall appoint qualified persons to serve, with or without compensation, as probation officers within the jurisdiction and under the direction of the court making the appointment . . .
 18 U.S.C. § 3602(a) (1985 & Supp.).

2. Approximately five years ago, Dumont applied for the same position. At that time, he passed

On February 8, 1995, Dumont instituted this action, challenging the District Court's policy of refusing to appoint any person who is over the age of thirty six to the position of United States probation officer. In his amended complaint, Dumont alleged that the District Court's maximum limitation for appointment as a Probation Officer violates the ADEA and the Equal Protection Clause. The complaint seeks injunctive relief and money damages.

In 1987, Congress passed the Federal Employment Retirement System ("FERS") which changed the maximum hiring age and retirement treatment for all law enforcement officers. In its definition of "law enforcement officers", FERS added a provision requiring that the duties of law enforcement officer be "sufficiently rigorous that employment opportunities are required to be limited to young and physically vigorous individuals." See 5 U.S.C. § 8401(17). Congress delegated authority to the director of the Administrative Office to determine the positions in the Judicial Branch that should be treated as law enforcement positions.

In March 1987, the Judicial Conference ("the Conference") approved a requirement that first-time candidates for the position of probation officer must not have achieved their thirty-fifth birthday at the time of the appointment. In March, 1991, the Conference raised the maximum entry age to 36. In its Committee report, the Conference explained that proper supervision of potentially dangerous criminal offenders requires "moderate to arduous physical exercise including prolonged periods of walking, standing physical dexterity and coordination necessary to operate a firearm and use of self defense tactics." The Committee further explained that on a daily basis, these officers "face unusual mental and physical stress because they are subject to danger and possible harm during frequent, direct contact with individuals who are suspected or convicted of committing federal offenses."

the test. According to Dumont, representatives of the District Court told him that he would be hired and assigned to the office in Orange Coun-

## DISCUSSION

### A. Standard For Summary Judgment

 Summary judgment is proper when there is no genuine issue of material fact and, based upon facts not in dispute, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). The Court's role on a motion for summary judgment is not to decide disputed issues of fact but to determine whether there is a genuine issue of fact to be tried. *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The Court must "draw all factual inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989). The Court is to inquire whether there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party, *Anderson v. Liberty Lobby Inc,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986), and to grant summary judgment where the nonmovant's evidence is merely colorable conclusory, speculative or not significantly probative. *Knight v. United States Fire Ins.,* 804 F.2d 9, 12–15 (2nd Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

### B. Fifth Amendment

 Dumont argues that the maximum entry age of 36 violates the equal protection clause of the Fifth Amendment. An equal protection challenge based upon an age classification must be judged under a rational basis standard. *Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979) (in upholding a mandatory retirement age for Foreign Service Employees the Court explained that it would not "overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational"); see also *Doyle v. Suffolk County,* 786 F.2d 523, 525 (2d Cir.1986), *cert. denied,* 479 U.S.

ty, New York. Shortly thereafter, the District Court rescinded the offer.

825, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986) (Court found that a New York State statute prohibiting the hiring of police officers over 29 years of age was rationally related to "ensuring that the police force is physically able and capable of being trained"); *Francke v. Dep't of Treasury*, 721 F.Supp. 47, 53 (S.D.N.Y.1989) (Department of Treasury's maximum hiring age policy for criminal investigators is rationally related to its legislative purpose of creating a young and vigorous work force); *Crane v. Schneider*, 635 F.Supp. 1430, 1433 (E.D.N.Y.1986) (age 36 cut-off for county deputy sheriff position does not violate equal protection clause because it is rationally related to the "government's legitimate interest in employing healthy and vigorous individuals in [strenuous] jobs ... and ensuring candidates are physically capable of being trained"); *Klotsche v. City of New York*, 621 F.Supp. 1113 (S.D.N.Y.1985) (maximum hiring age limitation of 29 contained in City's administrative code does not violate equal protection clause); *Colon v. City of New York*, 535 F.Supp. 1108 (S.D.N.Y.1982) (maximum hiring age for city police officers does not violate equal protection clause).

■ The rational basis standard has two prongs: (1) the challenged action must have a legitimate purpose and (2) it must have been reasonable for lawmakers to believe that the use of the challenged classification would promote that purpose. *Massachusetts Retirement Board v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976).

**3.** Similarly, in *Massachusetts Board of Retirement v. Murgia*, the Supreme Court considered a constitutional challenge to a Massachusetts statute which made mandatory the retirement of policemen at fifty years of age. The Court upheld the statute, observing:

> The Court's decisions give no support to the proposition that the right of governmental employment per se is fundamental ... In this case, the [statute] clearly meets the requirements of the Equal Protection Clause, for the State's classification rationally furthers the purpose identified by the State: Through mandatory retirement at age fifty, the legislature seeks to protect the public by assuring physical preparedness of its uniformed police. Since physical ability generally declines with age, mandatory retirement at age 50 serves to remove from police service those whose fitness

■ As for the first prong, we find that the Administrative Officer's policy of maintaining a vigorous staff is a legitimate government objective. As noted above, probation officers supervise offenders placed under supervision by the court. They are authorized, among other things, to make arrests. See 18 U.S.C. § 3606.

As for the second prong, we find that the maximum hiring age policy of 36 as implemented by the Administrative Officer is rationally related to that purpose. The hiring age policy keeps the average age of the probation officer low, and in the majority of cases a younger individual will be more physically vigorous and thus better suited to the potential dangers associated with supervising criminals. While the "classification involved here is to some extent both underinclusive and overinclusive, and hence the line drawn by congress imperfect, it is nevertheless the rule that in a case like this 'perfection is by no means required'. The provision does not offend the constitution simply because the classification is not made with mathematical nicety ..." *Vance*, 440 U.S. at 108, 99 S.Ct. at 948 (citations omitted).[3]

Dumont contends that the government mischaracterizes a probation officer as a law enforcement position, asserting that probation officers are not involved in investigating, apprehending or detaining persons suspected or convicted of offenses against the United States but rather investigate after the detention and conviction of individuals. See 5 U.S.C. § 8401(17) (1977 & Supp.1994).[4]

for work presumptively has diminished with age.

**4.** Dumont contends that a probation officer's position is neither investigative nor rigorous within the meaning of the statute. First, he claims that the probation officer's basic tasks of monitoring and supervising individuals and preparing presentence reports falls short of the investigation contemplated in Section 8401(17)(A)(i)(I). Dumont argues that because the Probation Officer Occupational Information groups "investigation" with "apprehension and detention of individuals," it refers to the charging and conviction stage, a dangerous stage, in the criminal justice process. A probation officer conducts his investigation, however, at a different and less hostile point in the criminal process.

Nonetheless, the Committee's determination that probation officers must make arrests, defend themselves against physical attack and must endure long periods of moderate to arduous exercise indicates that the government has a rational basis for concluding that probation officers are law enforcement officers.[5]

## CONCLUSION

For the reasons stated, Dumont's motion for a preliminary injunction is denied; Defendants' motion to dismiss is granted. The clerk shall enter judgment.

**SO ORDERED.**

Additionally, Dumont argues that the Probation Officer Occupational Information section regarding Qualifications suggests that the position of a probation officer is a non-law enforcement type job. Dumont notes that the section regarding general experience related to employment, the application states: [e]xperience as a police, custodial, or security officer other than criminal investigative work is not creditable." On the other hand, work in such fields as investigation, counseling and guidance of offenders in community corrections or pretrial programs or in closely allied fields such as serving as an education, guidance counsellor or social worker, case worker or psychologist is all creditable. Dumont also notes that philosophy, as opposed to police science, is considered creditable course work. Dumont fails to point out, however, that correctional administration, criminal justice, criminology, and penology are all creditable.

5. Because Dumont acknowledges that the ADEA is inapplicable to this lawsuit, we also dismiss this claim.