UNITED STATES of America,

v.

Robert VILLANUEVA, Defendant.

No. 98 Cr. 0264 (BSJ).

United States District Court,
S.D. New York.

Nov. 5, 1998.

---

Kevin S. Reed, Assist. U.S. Atty., U.S. Attorney's Office, New York City, for U.S.

Michael R. Young, New York City, for Robert Villanueva.

## OPINION & ORDER

JONES, District Judge.

Pending are defendant Robert Villanueva's pre-trial motions to suppress as evidence (i) cellular telephones seized from defendant's car on August 22, 1997, and (ii) recordings of cellular telephone conversations involving the defendant intercepted by employees of AT & T Wireless Services during August 1997. On September 11, 1998, the Court held a suppression hearing and reserved decision. Having considered the evidence produced at the hearing, as well as the parties pre-hearing and post-hearing submissions, defendant's motions are denied.

### BACKGROUND

In 1994, defendant was convicted in the United States District Court for the Southern District of New York of credit card fraud and wire fraud and was sentenced to five years' probation. Residing in Brooklyn at the time, Villanueva was assigned to the United States Probation Office in the Eastern District of New York, and specifically to Probation Officer Donald Vinci.

As early as 1995, Officer Vinci began receiving information that Villanueva was con-

tinuing to engage in criminal fraud. On April 1, 1997, Villanueva reported to Officer Vinci as directed and was questioned about his involvement in fraudulent activity involving cellular telephones. In response, Villanueva admitted that he had acted as a recruiter for individuals who provided illegal cellular service and in return received two cellular telephones and free, unlimited, illegal cellular service. Shortly thereafter, Villanueva stopped reporting to Officer Vinci. On April 24, 1997, Officer Vinci requested the Probation Office in the Southern District of New York to obtain a warrant for Villanueva's arrest.

On August 22, 1997, Officer Vinci and his partner, Probation Officer Christopher Wodzinski, were driving together in Brooklyn when they noticed a nearby livery cab. Officer Vinci recognized the cab "as identical to the type of car" driven by Villanueva, who Officer Vinci knew to be employed as a livery cab driver. Tr. 49.[1] At Officer Vinci's request, Officer Wodzinski maneuvered the car next to the livery cab so that Officer Vinci could determine whether Villanueva was inside. As Officer Wodzinski did so, Villanueva noticed the officers and made a quick left turn, apparently in an attempt to evade them. Officer Wodzinski, however, managed to follow the vehicle and was able to pull up along side of it because it was stopped in traffic.

At that point, Officer Vinci exited his car, walked over to the driver's side of the livery cab, and identified Villanueva as the driver. In the meantime, Officer Wodzinski positioned his vehicle in front of Villanueva's and Officer Vinci directed Villanueva to exit the car. Villanueva complied, and, as he did so, Officer Vinci noticed a cellular telephone on the driver's side floor that Villanueva confirmed was his. Officer Vinci then telephoned the United States Marshals Service to confirm that the arrest warrant he had requested in April had been issued. Learning that it had and that the Marshals Service was sending marshals to arrest Villanueva,

Officer Vinci made arrangements with Villanueva's employer for another cab to pick up Villanueva's passenger.

While these events unfolded, Officer Wodzinski, who had been standing on the passenger side of Villanueva's car questioning Villanueva's passenger, joined Officer Vinci and Villanueva on the driver's side. Officer Wodzinski frisked Villanueva and then asked him "if there was anything in the car that might pose a threat to [the officers'] safety." Tr. 41. Villanueva responded negatively, and then Officer Wodzinski asked Villanueva "if he would mind if [he] took a look through the car to make sure that that was the case." Tr. 42. Villanueva responded, "Go ahead," but prior to searching the car, Officer Wodzinski asked again, "[A]re you sure." *Id.* Villanueva again expressed his assent, upon which Officer Wodzinski proceeded to search Villanueva's car. Looking first under the driver's seat, Officer Wodzinski found a parcel wrapped in an oily cloth. He removed the parcel from the car and asked Villanueva what it was. Villanueva answered that the parcel contained cellular phones, and Officer Wodzinski asked Villanueva whether he (i.e., Officer Wodzinski) could open it. Villanueva agreed, and Officer Wodzinski did so and found several cellular phones. Officer Vinci seized the phones, recalling that Villanueva had admitted to engaging in cellular phone fraud prior to absconding. Continuing his search, Officer Wodzinski also removed the keys from the ignition of defendant's car. Shortly thereafter, United States Marshals arrived, arrested Villanueva, and removed him from the scene.

### DISCUSSION

I. *Motion To Suppress Cellular Phones*

■ Defendant's motion to suppress the cellular telephones seized by Officer Vinci on August 22, 1997, is without merit. Officer Wodzinski was entitled to search defendant's car and the parcel found therein as an incident to a lawful arrest.[2] *See New York v.*

---

1. "Tr." refers to the suppression hearing transcript of September 11, 1998.

2. Because the Court finds that the search of defendant's car and the parcel were permissible

as a search incident to a lawful arrest, it need not consider whether defendant consented to the search.

*Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *Belton* established that upon the "lawful custodial arrest of the occupant of an automobile, [an officer] may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" and examine the contents of any containers found therein. *See id.* This rule applies regardless of whether the occupant has been removed from the car and/or physically restrained. *See United States v. Tobon–Sierra,* 954 F.Supp. 73, 75 (S.D.N.Y. 1997).

Furthermore, that Officers Vinci and Wodzinski did not formally arrest defendant-a task they left to the United States Marshals-does not render *Belton* inapplicable because the officers effected a *de facto* arrest of Villanueva by detaining him pending the Marshals' arrival. *See Posr v. Doherty,* 944 F.2d 91, 98 (2d Cir.1991). Here, the evidence indicates that the officers pulled over Villanueva's car, blocked the car from moving, took the keys from the ignition, and held Villanueva until the Marshals arrived. The officers were legally entitled to take these actions based on defendant's fugitive status. *See Dumont v. Administrative Officer,* 915 F.Supp. 671, 674 (S.D.N.Y.1996) ("[Probation officers] are authorized, among other things, to make arrests.") (citing 18 U.S.C. § 3606); *Wilson v. United States,* 767 F.Supp. 551, 553 n. 4 (S.D.N.Y.1991) ("[I]f a probation officer has probable cause to believe that a probationer has violated a condition of his probation, the probation officer may arrest the probationer, even without a warrant.") (citing 18 U.S.C. § 3606). Having done so, the officers found themselves facing the same safety concerns that arise in any arrest situation and which provide the basis for the incident to arrest exception to the Fourth Amendment. *See Belton,* 453 U.S. at 457, 101 S.Ct. 2860 (incident to arrest exception justified by officers' need to remove weapons that might pose a danger to them).

■ Likewise, Officer Vinci's seizure of the phones after their discovery was also lawful. Items discovered during a lawful warrantless search may be seized where an officer has probable cause to believe they are evidence of a crime. *See Arizona v. Hicks,* 480 U.S. 321, 326–27, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). Here, probable cause was abundantly present. Defendant had recently admitted to Officer Vinci that he had received two cellular telephones in return for his participation in a scheme to obtain cellular phone service by illegal means. Accordingly, under the circumstances, Officer Vinci was justified in concluding that the cellular phones in defendant's car were likely to be evidence, instrumentalities, and/or fruits of a crime, and was therefore justified in seizing them.

II. *Motion to Suppress Recordings of Intercepted Cellular Telephone Conversations Involving Defendant*

Defendant also seeks to suppress various recordings of cellular telephone conversations involving the defendant, intercepted by employees of AT & T Wireless Services during August 1997, claiming that the Government was involved in intercepting these calls. Defendant also contends that AT & T Wireless was not authorized to disclose the tape recordings of the intercepted calls to law enforcement authorities. Both of these contentions lack merit.

■ First, the Fourth Amendment is not even implicated here because the Government had no involvement whatsoever with the interceptions. At the hearing, AT & T Wireless Business Security Manager John Fitts ("Fitts"), who supervised AT & T's interception of defendant's calls, established that the interceptions were done without Government involvement.[3] At the conclusion of Fitts's testimony, the Court observed that Fitts had been "highly credible" and indicated that the "intercepts were appropriately made and that they are admissible." Tr. 69. At defendant's request, however, the Court reserved decision and gave both the defendant and the Government seven days to supplement the record with any additional evidence. On September 18, 1998, the Government submitted affirmations by

---

**3.** Fitts's testimony included his affirmation in support of the Government's opposition to defendant's pre-trial motion to suppress, which the Court accepted in lieu of a direct examination.

Assistant United States Attorney Joshua Berman and FBI Special Agent Greg O'Neill, who were the Government personnel involved in the initiation of the investigation of cellular telephone fraud by defendant and who state that they had no communication whatsoever with AT & T Wireless about the matter. Defendant submitted no additional evidence and now seeks a continuation of the hearing so that he may question AUSA Berman and Special Agent O'Neill.

■ Since the hearing, defendant has submitted no evidence that would cause the Court to reconsider its view of the evidence at the close of the hearing that there was no Government involvement with the interceptions. In fact, since the hearing, the evidence that there was no Government involvement with the interceptions has only been buttressed by the affirmations of AUSA Berman and Special Agent O'Neill. Accordingly, because the Government was not involved with the interceptions, defendant has no Fourth Amendment basis for suppression.[4]

■ Likewise, defendant has no statutory basis for suppression of the interceptions. The Common Carrier exception–18 U.S.C. § 2511(2)(a)(i)-to the Electronic Communications Privacy Act of 1986, is an exception to § 2511's general prohibition against intercepting wire, oral, and electronic communications, and provides in pertinent part that:

> [i]t shall not be unlawful ... for an ... officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service....

This provision has been repeatedly interpreted by Courts to authorize telephone companies to intercept and monitor calls placed over their facilities in order to combat fraud

and theft of service. *See, e.g., United States v. Pervaz,* 118 F.3d 1, 5 (1st Cir.1997). Here, this is precisely why AT & T Wireless personnel intercepted defendant's calls. As Fitts's testimony establishes, AT & T Wireless security personnel intercepted defendant's calls in the course of an investigation into a large fraud scheme being perpetrated against AT & T, whereby thousands of dollars worth of telephone service was being stolen.

■ Finally, defendant's argument that AT & T Wireless was not authorized to disclose the tapes of the intercepted telephone calls to law enforcement officials is misplaced. This contention ignores both the plain language in the Common Carrier exception authorizing disclosure, and "disregards the clear purpose of 18 U.S.C. § 2511(2)(a)(i), which was designed to allow disclosure of justified wire monitoring by communication carriers for the purpose of criminal prosecution of those who fraudulently use their services." *United States v. Harvey,* 540 F.2d 1345, 1352 (8th Cir.1976).

### *CONCLUSION*

For the foregoing reasons, defendant's motions to suppress (i) the cellular telephones seized from his car on August 22, 1997, and (ii) the recordings of cellular telephone conversations involving the defendant intercepted by employees of AT & T Wireless Services during August 1997, are denied.

**SO ORDERED.**

---

4. Defendant's request to continue the hearing so that he may question AUSA Berman and Special Agent O'Neill is denied. Where, as here, a defendant's allegations are based entirely on specula-

tion or conjecture, the defendant is not entitled to an evidentiary hearing. *See United States v. Wang,* 98 Cr. 199 (DAB), 1998 WL 556160, at *4 (S.D.N.Y. Aug. 31, 1998).